CT Corporation

**Service of Process Transmittal**
11/30/2015
CT Log Number 528249533

TO:  Jeff Grossinger
Allstate Insurance Company
MCO Office, 222 S. Mill Avenue
Tempe, AZ 85281

RE:  **Process Served in New Mexico**

FOR:  Allstate Insurance Company  (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Anthony Perez and Cyndee Perez, Pltfs. vs. Allstate Insurance Company, etc., Dft. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Return, Complaint, Exhibit(s), Demand |
| **COURT/AGENCY:** | Eighth Judicial District Court, Taos County, NM<br>Case # D820CV201500342 |
| **NATURE OF ACTION:** | Insurance Litigation - Claim for policy benefits |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Santa Fe, NM |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 11/30/2015 postmarked on 11/10/2015 |
| **JURISDICTION SERVED :** | New Mexico |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days from the date of service |
| **ATTORNEY(S) / SENDER(S):** | C. Brian James<br>PO Box 32673<br>Santa Fe, NM 87505<br>505-629-3326 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 12/02/2015, Expected Purge Date: 12/07/2015 |
| | Image SOP |
| | Email Notification,  Jeff Grossinger  cdvfx@allstate.com |
| | Email Notification,  Milt Thulin  Milt.Thulin@allstate.com |
| | Email Notification,  John Darabaris  cd2w6@allstate.com |
| | Email Notification,  Jason Hayes  jay.hayes@alllstate.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 1012 Marquez Pl Unit 106B<br>Santa Fe, NM 87505-1833 |
| **TELEPHONE:** | 360-357-6794 |

Page 1 of  1 / GG

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



EXHIBIT
A

tabbies



$ 12.00
US POSTAGE
PITNEY BOWES
02 1R
0002008561   NOV 10 2015
MAILED FROM ZIP CODE 87501

CERTIFIED MAIL

7012 3460 0000 1399 8007

Office of ...............dent of Ins.
Service ...............
P. O. B ...............
Santa Fe, NM 87504-1689

CTCO123   875012014-1A15
NOTIFY SENDER OF NEW ADDRESS   11/25/15
:CT CORPORATION SYSTEM
1012 MARQUEZ PL UNIT 106B
SANTA FE NM 87505-1833

STATE OF NEW MEXICO
**OFFICE OF SUPERINTENDENT OF INSURANCE**
Mailing Address: P.O. Box 1689, Santa Fe, NM 87504-1689
Physical Address: 1120 Paseo de Peralta, Room 428, Santa Fe, NM 87501
Main Phone: (505) 827-4601; Main Fax (505) 827-4734; Toll Free: 1-855-4-ASK-OSI
www.osi.state.nm.us

**SUPERINTENDENT OF INS.**
**John G. Franchini – (505) 827-4299**

**DEPUTY SUPERINTENDENT**
**Robert Doucette – (505) 827-5832**

**Service of Process**
**Room 434**
**(505) 827-1291**

November 9, 2015

Allstate Insurance Company
C/O CT Corp. System
123 East Marcy St. Ste. 201
Santa Fe, NM 87501

Re:   Cyndee & Anthony Perez Perez Vs Allstate Insurance Company
      D820CV2015-00342

Dear Mr. President:

In accordance with the provisions of NMSA 1978, Sections 59A-5-31 & 59A-32, enclosed is a
copy of a Summons, Complaint and Jury Demand fee has been paid at the time of filing this
Complaint and a Jury Demand, in the State of New Mexico on the above styled cause. Service
has been accepted on your behalf as of November 9, 2015.

Respectfully,

John G. Franchini, Superintendent

Enclosure

CERTIFIED MAIL  7012 3460 0000 1399 8007

STATE OF NEW MEXICO
8th JUDICIAL DISTRICT COURT
COUNTY OF TAOS

Case Number: D-820-CV-2015-00342
Judge: Sarah C. Backus

Plaintiff(s): **Cyndee and Anthony Perez**

-v-

Defendant, **Allstate Insurance Corporation, a
          Delaware corporation.**

Name: Allstate Insurance
c/o Office of Superintendent of Insurance
4th Floor,
1120 Paseo De Peralta
Santa Fe, NM 87501

Court Address: 105 Albright Street, Taos, NM 87571                     Telephone: 575.758.3173

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that:
1. A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.
2. You must respond to this lawsuit in writing. You must file your written response with the Court no later than
   thirty (30) days from the date you are served with this Summons.
(The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's
address is listed above.
3. You must file (in person or by mail) your written response with the Court. When you file your response, you
   must give or mail a copy to the person who signed the lawsuit.
4. If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit. 5.
   You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in
   writing and pay a jury fee.
6. If you need an interpreter, you must ask for one in writing.
7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer
   at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

Dated at Taos, New Mexico, this _____ day of October, 2015. 30th

CLERK OF COURT

        /s/ Beverly Kuhn   10/30/2015
By: _____

Attorney for Plaintiff
Name:             C. Brian James
Address:          PO Box 32673 Santa Fe, NM 87594
Telephone No.:    505.629.3326
Email Address:    cbjames1969@gmail.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.
**RETURN**

STATE OF NEW MEXICO )
                       )ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:
[ ] to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)
[ ] to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).
After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:
[ ] to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.
[ ] to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).
[ ] to _____, an agent authorized to receive service of process for defendant _____.
[ ] to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).
[ ] to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).
Fees: _____

_____
Signature of person making service

_____
Title (*if any*)
Subscribed and sworn to before me this _____ day of _____, _____.2

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

8TH JUDICIAL DISTRICT C(
TAOS COUNT
FILED IN MY OF
10/29/2015 11:20:1
BERNABE P. ST(
DISTRICT COURT C(

FXF

STATE OF NEW MEXICO

8th JUDICIAL DISTRICT COURT

FOR THE COUNTY OF TAOS

ANTHONY PEREZ and CYNDEE PEREZ,

              Plaintiffs,

                                                                          D-820-CV-2015-00342

-v-

ALLSTATE INSURANCE CORPORATION,
a Delaware corporation,
                        Defendants.

## **COMPLAINT AND JURY DEMAND**

The Plaintiffs say:

> *The Plaintiffs request a trial by jury and the jury trial
> fee has been paid at the time of filing this Complaint.*

1. Plaintiffs Anthony and Cyndee Perez (Perez) are married residents of the Town of Taos, Taos County, New Mexico who purchased a homeowner's insurance policy from the Defendant Allstate Insurance Corporation (Allstate), doing business in the State of New Mexico as Allstate Insurance.

2. Allstate, per its 2014 Annual Report, collected $28,000,000,000 in net written premiums in 2013.

3. Perez maintains assets considerably less than $28,000,000,000.

4. As a result of a burst water pipe, Perez suffered catastrophic damage to their home in Taos County, NM.

5. The exact date of the damage is unknown given the nature of the problem, but the Claim # 0252118492 HKM was assigned the date of July 15, 2012 as the Date of Loss by Allstate.

6.  Allstate's wrongful actions on which this complaint is being made continued through July 2015.

7.  The catastrophic damage consisted of the erosion of the subsurface of the Perez home resulting in major damage to the interior of the home including, but not limited to the development of large cracks in the floor, walls and ceiling, and other damage to the fixtures and cabinetry contained therein.

8.  Perez suffered additional damage to the interior fixtures of the home while investigating the reason for, and cause of, the damage they noticed to the home's interior.

9.  Having determined that the cause of the damage was the result of a burst pipe attached to their home and intruding into their home Perez filed a claim with Allstate pursuant to their homeowner's policy with Allstate.

10. Upon information and belief Allstate hired Frontier Adjusters of Taos (Frontier), July 27, 2012 to evaluate the Perez claim.  Exhibit 1  Frontier Adjusters of Taos August 2, 2012

11. Frontier inspected the Perez home on behalf of Allstate on July 30, 2012 and issued a report dated August 2, 2012.

12. The Frontier report provided a replacement value of the Perez home at $584,955.69 and an actual cash value of the Perez home at $511,707.82.

13. Frontier provided an estimate of repairs to Allstate in the amount of $1,672.98.

14. Allstate subsequently issued a check to Perez in the amount of $672.98 representing the damages less the Perez deductible of $1,000.

15. Allstate described the check for $672.98 as a "**courtesy** given our adjuster told them they would be covered, however, because water did not enter the home, the access is not covered

and the settling is excluded." (Emphasis added)   Exhibit 2   Allstate-Michelle Kluba-September 21, 2012

16. Upon receipt of a check for $672.98 from Allstate Perez contacted C. Brian James, Attorney at Law and asked for assistance with the Allstate Claim referenced above.

17. James agreed to try to help resolve the Perez/Allstate issue pursuant to the following terms: James would accept 1/3 of the amount that the Allstate settlement increased subsequent to the check for $672.98 or the amount paid in attorney fees to James by Allstate, at James' option.

18. The Allstate check to Perez in the amount of $672.98 was returned by Perez to Allstate and James' direction.  Exhibit 3-Allstate-Michelle Kluba-September 27, 2012

19. On or about September 12, 2012 contacted Allstate and advised Allstate that he would be assisting the Perez's in resolving the Perez claim.

20. On September 27, 2012 Allstate acknowledged the September 12, 2012 letter from C. Brian James, Esq. and the return of the check for $672.98 and cancelled it as requested by Perez.

21. On September 24, 2012 Allstate sent to Perez a copy of the Perez's Allstate Your Choice Home **Gold Protection** package. (Emphasis in original)

22. Among the provisions of the Gold Protection package from Allstate is the following provision: "When the policy provisions conflict with the statutes of the state in which the residence premises is located, the provisions are amended to conform to such statutes." (Allstate Property and Casualty Insurance Company Homeowners Policy-Page 4 of 29)

23. Perez's damages stemming from Allstate's refusal to provide adequate coverage due to factors, including but not limited to: common law bad faith, breach of contract, violation

of New Mexico consumer protection statutes and the New Mexico insurance code continue on an ongoing basis through July 2015.

24. Allstate relied upon "exclusion" provisions of the Allstate Property and Casualty Insurance Company Homeowners Policy issued to Perez beginning in July 2012 and extending until January 10, 2014 to deny any coverage for Perez's losses, a period of eighteen months.

25. Allstate denied coverage based on an Allstate Property and Casualty Insurance Company Homeowners Policy exclusion "policy" #4.  The number 4 appears 16 times in the 29 pages of the policy.  Exhibit 4 Allstate- Michelle Kluba-October 23, 2012,

26. Ultimately Allstate identified the relevant #4 as a section that excluded coverage for "Earth movement of any type…" which purported exclusion is at Page 15 of 29 Allstate Property and Casualty Insurance Company Homeowners Policy.

27. Allstate Property and Casualty Insurance Company Homeowners Policy contains exclusions to coverage beginning at Page 14 and extending through Page 17 which exclusions, while largely incomprehensible and paraphrased hereafter, purport to exclude Allstate coverage for losses due to floods, water, earth movement, building codes or ordinances, failure of the insured to preserve property, intentional acts of the insured, criminal acts of the insured, weather conditions, planning construction or maintenance, vapors, fumes, contaminants, rot, fungus to name but a few.

28. Subsequent to being asked for assistance by Perez, James has:

    A.  exchanged more than 100 emails with Allstate representatives, experts, consultants, attorneys, adjusters and members of the executive staff;

    B.  made dozens of telephone calls to Allstate representatives, self-described as "a dedicated team of claim professionals" experts, consultants, attorneys, adjusters

and members of the executive staff, most of which were not answered except by
voice mail, including but not limited to:

1) Michelle Kluba

2) Marianne Warneke

3) George Walters

4) Karen last name unknown, corporate headquarters, Northbrook, IL,
   Telephone:  847.402.5448, Ext. 1120910.

5) Mark Klecan, Esq.

6) Ann Keith, Esq.

7) Elisabeth Martini, Esq.

8) Starling, Madison Lofquist, Inc.

9) Frontier Adjusters of Taos

10) Ric Hartline

C.  researched Allstate's litigation history in New Mexico;

D.  reviewed and responded to:

1) an adjuster's report;

2) a soils expert report;

3) an engineering report;

4) a revised engineering report;

5) a construction estimate report;

6) a revised construction estimate report;

7) amendments to the construction estimate report.  Exhibit 5-List of Perez attorney
   contacts with Allstate and Perez-undated

29.  Allstate has been represented by at least three different attorneys or law firms throughout the processing of this claim.  Exhibit 6-Correspondence to or from Allstate's various legal counsel

30. To avoid an uncompensated catastrophic loss of their home, Perez's were forced to seek legal representation of their own.

31. Perez's attorney has repeatedly advised Allstate since 2012 that their failure to properly investigate, to properly interpret the exclusions in the Perez policy and to adequately compensate Perez for their losses would result in litigation asking for compensation for the reasonable cost of the Perez attorney.

32. Perez's attorney was advised by George Walters via telephone that Allstate never pays attorney fees and that Attorney fees are precluded by the Allstate policy of insurance notwithstanding Allstate's actions toward its insured.

33. The district court may award attorney fees based on NMSA 1978, §  59A-16-30(B) (1990), and NMSA 1978, §  39-2-1 (1977).   Under Section 59A-16-30(B) the district court has the discretion to award attorney fees against the party who has engaged in an unfair claims practices if that party has willfully engaged in such a violation.   Under Section 39-2-1, the insured is entitled to an award of attorney fees if he prevails in any type of first party coverage action against the insurer and the insurer acted unreasonably in failing to pay the claim.

34. Unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful.  §57-12-3 NMSA 1978.

35.  No person shall engage in this state in any practice which in this article is defined or prohibited as, or determined to be, an unfair method of competition, or unfair or deceptive act or practice, or fraudulent.  §59A-16-3 NMSA 1978

36.  Pursuant to §59A-16-20 NMSA 1978, Allstate violated numerous provisions of the New Mexico Insurance Code:

Unfair claims practices defined and prohibited.

Any and all of the following practices with respect to claims, by an insurer or other person, knowingly committed or performed with such frequency as to indicate a general business practice, are defined as unfair and deceptive practices and are prohibited:

A.  misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;

B.  failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;

C.  failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;

D.  failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;

E.  not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

F.  failing to settle all catastrophic claims within a ninety-day period after the assignment of a catastrophic claim number when a catastrophic loss has been declared;

G.  compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered;

H. attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

I. attempting to settle claims on the basis of an application that was altered without notice to, or knowledge or consent of, the insured, his representative, agent or broker;

J. failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made;

K. making known to insureds or claimants a practice of insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

L. delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

M. failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage;

N. failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or

O. violating a provision of the Domestic Abuse Insurance Protection Act 59A-16B-1 to 59A-16B-10, NMSA 1978.

37. Every contract contains an implied covenant of good faith and fair dealing which prohibits any contracting party from injuring another party's right to receive the benefits of the agreement. See, e.g., RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981); see also notes 12-17 infra and accompanying text.

38. It is undisputed that Perez had a contract with Allstate to provide insurance coverage for their home.

39. It is undisputed that Perez made a claim based upon their contract with Allstate for coverage for losses incurred as a result of water damage invading their premises in July 2012.

40. It is undisputed that Allstate, as a "courtesy" attempted to settle the Perez claim for $672.98, in full, representing an evaluation by Allstate of total losses of $1,672.48 less the $1000 deductible.

41. It is undisputed that prior to Perez hiring an attorney that Allstate denied coverage beyond the "courtesy" extended in the amount of $672.48 which amount Allstate averred it was not obligated to pay.

42. It is undisputed that the losses incurred by Perez were in excess of $353,572.59.  Exhibit 7-Six (6) Allstate drafts to Perez to compensate water damage

43. Allstate's original proposed resolution under compensated Perez's losses by $352,899.61.

44. It is undisputed that Allstate attempted to avoid paying the Perez claim by relying on a theory that the Perez home incurred the damages because of "settling" of the house which is a loss excluded by Allstate's policy of insurance issued to Perez.

45. It is undisputed that the Perez house was constructed more than a decade after the house was damaged resulting in the Perez claim filed with Allstate.

46. It is undisputed that Allstate assigned an attorney to the Perez file named Mark Klecan in April 2013.  Exhibit 8 and Exhibit 6

47. Klecan never returned any of the calls from Perez's attorney for a period of months.

48. Klecan's legal assistant, Jo A. Harden, advised Perez's attorney that Klecan "never calls anybody back" and that Klecan is "too busy".

49. It is undisputed that Allstate finally assigned a different attorney to the Perez claim more than one year after the claim was filed by Perez.  Exhibit 6-Retention letter from Allstate's second group of attorneys-July 17, 2013.

50. It is undisputed that 23 months after the Perez claim Allstate hired another agent to examine the circumstances of the Perez claim.  Exhibit 9 Starling Madison Lofquist, Inc. letter to Elisabeth Martini, Esq.-June 26, 2014

51. Allstate's investigation of the Perez claim took 18 months.

52. Perez's had no alternative but to seek legal help to try to collect the benefit of their bargain with Allstate or suffer uncompensated damages of $350,000 to a house valued at $555,000.

53. Perez's were unable to afford to pay an attorney out of pocket and agreed to pay for legal services rendered by their attorney 1/3 of the amount that their settlement increased above $1,672.48 or whatever Allstate paid in attorney fees at the Perez's attorney's option.

54. That attorney fee is $116,456.87.

55. Allstate has engaged in a deliberate pattern of behavior which, given the totality of the circumstances surrounding the Perez claim, exhibited deliberate, reckless and wanton disregard for Allstate's insured, the Perezes.

56. Among, but not all of, those circumstances are:

    A. Attempt to settle a $350,000 claim for $1,672.48 for untenable reasons and an unreasonable application of the "exclusions" written into the contract by Allstate.

    B. Denial of coverage based upon "settling"

    C. Negligent investigation by Allstate's agent, Frontier Adjusters of Taos.

    D. Delaying completing a proper investigation for more than 18 months.

    E. Delay in providing any coverage to Perez for more than 18 months.

F.  An "erroneous" calculation of Perez's damages by initially using and submitting a bid for repairs using the wrong square footage for the house, using 1,350 sq. ft. instead of 3,150 sq. ft.  Exhibit 10 Correspondence James to Keith-April 15, 2014

G.  Issuing the first check to begin to repair the house in April 2014, more than 21 months after the date of loss.

H.  Continuing the repair process so that the final check received by Perez from Allstate came July 2015, more than 15 months after the repair was undertaken.

I.  Taking 36 months to resolve this claim when the average time for new construction for a totally new 3600 sq. ft. house would be not longer than 4 months.

57. Allstate's action toward Perez violate at least §59A-16-20 NMSA 1978 Sections A., B., C., D., E., G and O. of the New Mexico Insurance Code.

58. Allstate's actions toward Perez violated the Unfair Practices Act insofar as a company that counts its assets in the hundreds of millions of dollars used its advantageous financial position *vis vis* the Perezes, a typical American family that does not count its assets in the hundreds of millions of dollars, to hire literally teams of people, adjusters, three sets of lawyers, and engineers to delay an appropriate resolution, obfuscate the terms of the contract between the parties and to try to confuse the Perezes in an attempt to intimidate the Perezes into accepting a settlement worth **.47%** of the actual damages sustained, less than one half of one percent.

59. Allstate's actions toward Perez constitute a breach of contract and the implied covenant in every contract of good faith and fair dealing.

60. Allstate publishes a 47 page Code by which it purports to operate, a portion of which is set out below:

A Message from Thomas J. Wilson
Allstate Chairman and Chief Executive Officer
Allstate's values and principles are the foundation for Our
Shared Purpose. They form the foundation for everything we
do and every interaction with more than 16 million
households. Our commitment to doing the right thing has
been at the core of this company throughout our history. We
do the right thing, the right way at the right time.

The Allstate Code of Ethics guides both our overall purpose
as a company and the things we do every day. This Code
provides a roadmap for making decisions and ensuring we
make the right choices.

Allstate stands apart because of our people. You are the key
to our success. This Code reflects the values and principles
you embody and ensure Allstate has the highest ethical
standards.  Exhibit 11 Excerpt from Allstate Code

61.    Nowhere within the 47 page Allstate ethical promise, nor within the voluminous policy

documents provided by Allstate to its customers, does Allstate advise its customers that even in

the event that Allstate, unilaterally; and, without reasonable cause, determines that they will not

extend coverage under the insurance contract that their customer will be obligated to retain legal

counsel at the customer's own expense to exercise their rights under the insurance contract which

expense can reduce the value of the customer's coverage by unknown sums of money.

62.    In the instant matter, the actions of Allstate in providing as a "courtesy" only $1,672.48

(less the $1,000deductible) toward damages that exceeded $350,000 have cost the Perezes more

than $115,000 in legal fees thereby reducing the value of their coverage by a whopping 33%.

63.    The mismatch in assets that the two parties herein have at their command is unbelievably

huge and represents billions of dollars in assets available to Allstate to fight with the Perezes who

do not have access to resources anywhere close to billions of dollars with which to combat

Allstate's unethical, unreasonable and illegal actions.

64.     The result is that Allstate has acted in a manner which is patently unfair and fraudulent as toward the Perezes, particularly so when viewed in light of Allstate's self-professed standards for, and promises of, ethical conduct in dealing with its insureds.

65.     As but a single example of the myriad of examples available, Allstate's agent Frontier Adjusters of Taos provided to Allstate a report dated July 2012, that report included 25 pages pictures of the extensive water damage to the Perez home.

66.     Notwithstanding that report including 25 pages of photos of water damage to the Perez home, and Allstate's promise to its customers;

### We Earn Trust and Succeed in the Market By:

- Complying with all applicable laws, rules and regulations
- Honestly and informatively marketing our products and services
- Substantiating our product and service claims
- Never making false, deceptive or misleading claims about, or otherwise disparaging our competitors' products or services
- Dealing fairly with Allstate's customers, employees, suppliers and competitors. We should not take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair dealing practice.

Allstate's employee, "customer service advocate" Michelle Kluba, one of Allstate's self-proclaimed "team of claim professionals", wrote to the Perezes in October 2012 that "There is no water damage to the dwelling." See Exhibit 4

67.     In fact there was $353,572.59 of water related damage to the Perez home.

68.     Given the totality of the circumstances in this matter Allstate has acted in a deliberate, malicious and unreasonable manner toward the Perezes.

69.     Given the totality of the circumstances Allstate has deliberately and maliciously deprived Perez of the benefit of their bargain under the insurance contract between the parties hereto.

Plaintiffs request:

A. A trial by jury.
B. A judgment in the amount of $116,456.87 against the Defendant in actual damages for attorney fees.
C. Punitive damages in an amount sufficient to penalize a multi-billion dollar insurance enterprise.
D. For costs and attorney fees for maintaining this cause of action so wrongfully sustained.
E. For such other and further relief as the Court deems fair and equitable given the instant facts and circumstances as allowed by New Mexico law.

October 24, 2015

_____
Anthony Perez

_____
Cyndee Perez

_____
C. Brian James
Attorney for Plaintiffs
PO Box 32673
Santa Fe, NM 87505

8TH JUDICIAL DISTRICT CO
TAOS COUNT
FILED IN MY OF
10/29/2015 11:20:1
BERNABE P. ST
DISTRICT COURT C

STATE OF NEW MEXICO

8th JUDICIAL DISTRICT COURT

FOR THE COUNTY OF TAOS


ANTHONY PEREZ and CYNDEE PEREZ,

          Plaintiffs,                    D-820-CV-2015-00342

-v-

ALLSTATE INSURANCE CORPORATION,
a Delaware corporation,
              Defendants.


## JURY DEMAND


Plaintiffs demand a trial by jury in this matter.


C. Brian James                          October 24, 2015
Attorney for Plaintiffs
PO Box 32673
Santa Fe, NM 87505
505.629.3326
cbjames1969@gmail.com

8TH JUDICIAL DISTRICT CO
TAOS COUNT
FILED IN MY OF
10/29/2015 3:16:3
BERNABE P. ST
DISTRICT COURT C

B

# Frontier Adjusters *of Taos*

1335 Paseo del Pueblo Sur   Suite # 100
**Taos, New Mexico  87571-5968**
Telephone (575)758-3260    Fax (575)758-9163
Taos@frontieradjusters.com

**Company:**  Allstate Insurance Company   **Attn:**  Linda Farrow
**Insured:**  Cyndee Perez   **Policy No.:**
**Our No.:**  12-177   **Claim No.:**  0252118492
**1st Contact:**  July 30, 2012   **Date of Loss:**  July 15, 2012
**Date Inspected:**  July 30, 2012   **Date Assigned:**   July 27, 2012
**Attachments:**   X   Xactimate Evaluation   X   Service Invoice
   X   Xactimate Estimate
   X   Photographs/Labeled-Xactimate
   X   Xactimate Scaled Diagram
   >   **Green dots on diagram = areas of tare in by insured**
**Risk (description):**   3 bedroom, 3 bathroom, single-story, mud adobe wall construction
with an attached add-on three car garage.
**Xactimate Replacement Evaluation: = $584,955.69**
   **ACV:= $511,707.82**
**Cause and Origin:**   The main 1" flexible copper, sub concrete water line developed a
leak. Risk is on a well and insured cannot accurately determine when leak developed or how
much water leak into ground below concrete slab (with radiant heat) near center of risk.
**Xact. Estimate   Attached   X  Yes**   _____ No

   **Replacement Cost:**   $1672.82 ( repair wall ingress )
   **Depreciation :**   $  -0-  (  no real betterment  )
   **Actual Cash Value:** $1672.22

**Estimate Remarks:** Mr. Insured is a licensed electrical contractor and wishes to preform
regress repairs himself (due to prior experience with local contractors) thus no profit and
overhead is reflected in estimate.

**Salvage:**   X  NO   _____   **Subrogation:**   X  NO   _____

**Extent of Settling:**   At this junction there has been settling of the concrete slab of main
house at the junction of kitchen area & den (yellow X on diagram). Settling has also occurred
along the common wall of bedroom #1 & den (red arrow in den) + cracked plaster in den
(purple arrow on diagram). Also the independent 3 car garage concrete slab has settled
along common wall of garage & bedroom #1 (red arrow in garage on diagram).

**Additional Work:** It is too early to determine the extent of settling to insured risk which is in
agreement with insured. Insured is agreeable to waiting 4 to 6 months to allow for settling
stabilization prior to formulating any repair estimate. We are thus enclosing our interim service
invoice. *We will proceed as indicated otherwise instructed.*

**Date:**   August 2, 2012   **Adjuster:**  Darrell L. Shelton

**EXHIBIT 1**

# Valuation Report

## Owner Information

| | | | |
|---|---|---|---|
| **Name:** | Cyndee Perez | **Phone:** | (575) 758-3553 |
| **Street:** | 320 Calle Crystal | **Date Entered:** | 8/2/2012 |
| **City, State ZIP Code** | Taos, NM 87571 | **Date Calculated:** | 8/2/2012 |
| **Country:** | USA | **Pricing Area:** | NMSF7X_JUL12 |

## General Information

| | | | |
|---|---|---|---|
| **Number of Stories:** | 2 Stories | **Use:** | Single Family Detached |
| **Sq. Feet:** | 2,620.00 | **Year Built:** | 2000 |
| **Cost per Finished Sq. Ft.:** | $223.27 | **Agent Code:** | |

## Foundation

| | | | |
|---|---|---|---|
| **Foundation Shape:** | 11-12 Corners - H or Custom Shape | **Foundation Type:** | 100% Concrete Slab |
| **Finished Basement Pct.:** | 0.00% | **Foundation Material:** | 100% Concrete |
| **Property Slope:** | None (0 - 15 degrees) | **Walk-out:** | No |

## Exterior / Interior

| | | | |
|---|---|---|---|
| **Roof Type:** | Flat | **Average Wall Height:** | 10 Ft. |
| **Number of Dormers:** | 0 | **Wall Material:** | 100% Drywall |
| **Roof Material:** | 100% Built-up (hot mopped) w/Gravel | **Floor Covering:** | 30% Carpet, 70% Hardwood - Plank |
| **Wall Material:** | 100% Synthetic Stucco | **Wall Finish:** | 30% Paint, 70% Venetian Plaster |
| | | **Ceiling Finish:** | 30% Paint, 70% Venetian Plaster |

## Key Rooms / Attached Structures

| | | | |
|---|---|---|---|
| **Kitchens:** | 1 - Large | **Garages/Carports:** | 3 Car Attached |
| **Bathrooms:** | 1 - 1.5 Bath, 2 - Full Bath | **Decks/Balconies:** | 500 Sq. Ft. Wood Polymer Decking |
| **Bedrooms:** | 1 - Extra Large, 2 - Large | **Patios/Porches:** | 250 Sq. Ft. Dyed (color added) Concrete |

## User-Defined Features / Additions

| | | | |
|---|---|---|---|
| **Features:** | None | **Additions:** | None |

## Systems

| | | | |
|---|---|---|---|
| **Heating:** | 1 Radiant Ceiling Heating System | **Specialty:** | 1 Water Softener, 1 Burglar Alarm System |
| **Air Conditioning:** | 2 Central Air Conditioning | **Fireplaces:** | 1 Masonry Fireplace |

## Cost Breakdown

| | | | | | |
|---|---|---|---|---|---|
| **Foundation:** | $25,090.47 | **Rough Framing:** | $43,928.83 | **Exterior Finish:** | $167,875.84 |
| **Windows:** | $13,730.30 | **Roofing:** | $17,826.18 | **Electrical:** | $16,434.34 |
| **Plumbing:** | $15,609.96 | **Heating/AC:** | $15,557.09 | **Floor Covering:** | $22,254.21 |
| **Interior Finish:** | $173,557.01 | **Appliances:** | $8,894.74 | **Specialty Systems:** | $19,925.48 |

## *Valuation Report*

| | |
|---|---|
| ***Estimated Replacement Cost (Calculated Value):*** | ***$584,955.69*** |
| ***Actual Cash Value (Calculated Value):*** | $511,707.82 |

(Replacement cost includes all applicable permits, fees, overhead, profit, and sales tax)

(Actual Cash Value equals replacement cost less depreciation)

The Replacement Cost figure represents the average estimated cost to rebuild this building after a total loss and includes such things as labor and materials to meet current building codes and general contractor profit and overhead for your location. The actual reconstruction costs for this building may differ from this figure due to changes in economic conditions, building contractor availability, and specific building contractor attributes. The estimate does not include costs for such items as excavation, land value or detached structures. This information is to be used for insurance purposes only and is provided on the condition and understanding that it represents only an estimate and that the provider is not responsible for good faith errors.

## *Valuation Report*

### Owner Information

| | | | |
|---|---|---|---|
| *Name:* | Cyndee Perez | *Phone:* | (575) 758-3553 |
| *Street Address:* | 320 Calle Crystal | *Date Entered:* | 8/2/2012 |
| *City, State ZIP Code* | Taos, NM 87571 | *Date Calculated:* | 8/2/2012 |
| *Country:* | USA | *Pricing Area:* | NMSF7X_JUL12 |

### General Information

| | | | |
|---|---|---|---|
| *Quality:* | Custom | *Number of Stories:* | 2 Stories |
| *Style:* | Southwestern | *Agent Code:* | |
| *Use:* | Single Family Detached | | |
| *Sq. Feet:* | 2,620 | | |
| *Year Built:* | 2000 | | |
| *Cost per Finished Sq. Ft.:* | $223.27 | | |

### Foundation

| | | | |
|---|---|---|---|
| *Foundation Type:* | 100% Concrete Slab | *Foundation Shape:* | 11-12 Corners - H or Custom Shape |
| *Finished Basement Pct.:* | 0.00% | | |
| *Basement Quality:* | Custom | | |
| *Foundation Material:* | 100% Concrete | | |
| *Property Slope:* | None (0 - 15 degrees) | *Walkout:* | No |

### Exterior

| | | | |
|---|---|---|---|
| *Roof Type:* | Flat | *Number of Dormers:* | 0 |
| *Roof Material:* | 100% Built-up (hot mopped) w/Gravel | *Wall Material:* | 100% Synthetic Stucco |

### Interior

| | | | |
|---|---|---|---|
| *Average Wall Height:* | 10Ft. | *Wall Material:* | 100% Drywall |
| *Floor Covering:* | 30% Carpet, 70% Hardwood - Plank | *Wall Finish:* | 30% Paint, 70% Venetian Plaster |
| *Ceiling Finish:* | 30% Paint, 70% Venetian Plaster | | |

### Garages

**Garage #1**

| | | | |
|---|---|---|---|
| *Number of Cars:* | 3 | *Style:* | Attached |
| *Living space above garage:* | 0.00% | | |

### Attached Structures

**Deck/Balcony #1**

| | | | |
|---|---|---|---|
| *Sq. Ft.:* | 500 | *Shape:* | Irregular |
| *Deck Material:* | Wood Polymer Decking | *Covered:* | 100.00% |
| *Enclosed:* | 0.00% | *Height:* | 4' |
| *Levels:* | 3 | *Benches Length(ft):* | 25' |

**Porch/Patio #1**

| | | | |
|---|---|---|---|
| *Sq. Ft.:* | 250 | *Material:* | Dyed (color added) Concrete |
| *Covered:* | 100.00% | *Enclosed:* | 25.00% |

**Other Attachments:**
None

---

## *Valuation Report*

### *Detached (detached items are not included in the final estimated cost)*

*Detached Items:*      None

### *User-Defined Features*

*Features:*      None

### *Additions*

None

### *Systems*

| | | | |
|---|---|---|---|
| *Heating:* | 1 Radiant Ceiling Heating System | *Specialty:* | 1 Water Softener, 1 Burglar Alarm System |
| *Air Conditioning:* | 2 Central Air Conditioning | | |
| *Fireplaces:* | Masonry Fireplace: 1 Custom Mantel, 1 Stone Face, 1 Masonry Chimney | | |

### *Home Features*

*Exterior Features:*   4 Brick Columns, 4 Decorative Fiberglass Columns, 3 Exterior Doors, 1 Sliding Patio Door, 16 Aluminum Horizontal Sliding Medium (12 - 23 SF), 1 Skylight Medium (6.6 - 9.0 SF), 5 Aluminum Specialty Window Medium (12 - 23 SF)

*Interior Features:*   2 Built-in Bookcase/Entertain. Center, 1 Built-in Desk/Vanity, 1 French Door (total number of doors), 1 Ornate Chandelier, 3 Ceiling Fan

*Additional Features:*   1 Laundry Tub

### *Rooms*

#### Living - Large (Above Grade Room)

*Room Features:*   1 Cornice or Crown Molding, 1 Chair Rail, 8 Decorative Beams (num. of beams).

#### Living - Large (Above Grade Room)

*Room Features:*   1 Cornice or Crown Molding, 1 Chair Rail, 8 Decorative Beams (num. of beams)

#### Bedroom/Small Living - Large (Above Grade Room)

*Room Features:*   1 Cornice or Crown Molding

#### Bedroom/Small Living - Large (Above Grade Room)

*Room Features:*   1 Cornice or Crown Molding

#### Bedroom/Small Living - Extra Large (Above Grade Room)

*Room Features:*   1 Cornice or Crown Molding

#### Kitchen - Large (Above Grade Room)

*Appliances:*   1 Garbage Disposal, 1 Dishwasher, 1 Range Hood - Stainless Steel, 1 Range Hood - Built-in Hardwood, 1 Space Saver Microwave, 1 Cook Top, 1 Built-in Oven

*Counters:*   100% Cultured Marble

*Room Features:*   3 Chair Rail

#### Bath - Full Bath (Above Grade Room)

*Counters:*   100% Solid Surface

*Room Features:*   1 Cornice or Crown Molding

*Fixtures / Features:*   1 Nat. Marble Tub/Shower Surr., 1 Extra Sinks (1 sink is incl. w/ea. bath), 1 Brass Faucet (no. of fixtures)

#### Bath - Full Bath (Above Grade Room)

*Counters:*   100% Solid Surface

*Room Features:*   1 Cornice or Crown Molding

*Fixtures / Features:*   1 Nat. Marble Tub/Shower Surr., 1 Brass Faucet (no. of fixtures)

## *Valuation Report*

**Bath - 1.5 Bath (Above Grade Room)**

| | |
|---|---|
| *Counters:* | 100% Solid Surface |
| *Room Features:* | 1 Cornice or Crown Molding |
| *Fixtures / Features:* | 1 Nat. Marble Tub/Shower Surr., 1 Extra Sinks (1 sink is incl. w/ea. bath), 1 Brass Faucet (no. of fixtures) |

**Utility - Large (Above Grade Room)**

**Hall - Large (Above Grade Room)**

| | |
|---|---|
| *Room Features:* | 1 Cornice or Crown Molding |

**Hall - Large (Above Grade Room)**

| | |
|---|---|
| *Room Features:* | 1 Cornice or Crown Molding |

**Dining - Large (Above Grade Room)**

| | |
|---|---|
| *Room Features:* | 1 Cornice or Crown Molding, 1 Chair Rail, 5 Decorative Beams (num. of beams) |

**Entry/Foyer - Medium (Above Grade Room)**

| | |
|---|---|
| *Room Features:* | 1 Cornice or Crown Molding, 1 Chair Rail |

**Laundry - Medium (Above Grade Room)**

**Nook - Medium (Above Grade Room)**

| | |
|---|---|
| *Room Features:* | 1 Cornice or Crown Molding, 1 Chair Rail |

**Walk-in Closet - Large (Above Grade Room)**

**Walk-in Closet - Large (Above Grade Room)**

**Pantry - Medium (Above Grade Room)**

## *Cost Breakdown*

| | | | | | |
|---|---|---|---|---|---|
| *Foundation:* | $25,090.47 | *Rough Framing:* | $43,928.83 | *Exterior Finish:* | $167,875.84 |
| *Windows:* | $13,730.30 | *Roofing:* | $17,826.18 | *Electrical:* | $16,434.34 |
| *Plumbing:* | $15,609.96 | *Heating/AC:* | $15,557.09 | *Floor Covering:* | $22,254.21 |
| *Interior Finish:* | $173,557.01 | *Appliances:* | $8,894.74 | *Specialty Systems:* | $19,925.48 |

## Valuation Report

**Estimated Replacement Cost (Calculated Value):**     **$584,955.69**

**Actual Cash Value (Calculated Value):**                $511,707.82

(Replacement cost includes all applicable permits, fees, overhead, profit, and sales tax)

(Actual Cash Value equals replacement cost less depreciation)

The Replacement Cost figure represents the average estimated cost to rebuild this building after a total loss and includes such things as labor and materials to meet current building codes and general contractor profit and overhead for your location. The actual reconstruction costs for this building may differ from this figure due to changes in economic conditions, building contractor availability, and specific building contractor attributes. The estimate does not include costs for such items as excavation, land value or detached structures. This information is to be used for insurance purposes only and is provided on the condition and understanding that it represents only an estimate and that the provider is not responsible for good faith errors.

|  |  |  |  |
|---|---|---|---|
| Insured: | CYNDEE PEREZ | Home: | (575) 758-3553 |
| Property: | 320 CALLE CRYSTAL | E-mail: | CYNPEZ@HOTMAIL.COM |
|  | TAOS, NM 87571-4430 |  |  |
| Home: | 7210 NDCBU |  |  |
|  | TAOS, NM 87571-6247 |  |  |

Claim Rep.:   LINDA S FARROW

Estimator:   Darrell Shelton

**Claim Number:** 0252118492          **Policy Number:** 000816175654          **Type of Loss:** Water

|  |  |  |  |
|---|---|---|---|
| Date Contacted: | 7/26/2012 7:33 AM |  |  |
| Date of Loss: | 7/15/2012 3:00 PM | Date Received: | 7/15/2012 6:04 PM |
| Date Inspected: | 7/26/2012 7:32 AM | Date Entered: | 7/27/2012 5:01 PM |

Price List:   NMSF7X_JUL12
             Restoration/Service/Remodel
Estimate:   CYNDEE_PEREZ

**12-177-ESTIMATE-PHOT**

**Main Level**



**Bedroom 2**      **Height: 8'**

| | |
|---|---|
| 434.00 SF Walls | 193.50 SF Ceiling |
| 627.50 SF Walls & Ceiling | 193.50 SF Floor |
| 21.50 SY Flooring | 53.33 LF Floor Perimeter |
| 58.83 LF Ceil. Perimeter | |

**Subroom 1: CLOSET**      **Height: 8'**

| | |
|---|---|
| 140.67 SF Walls | 17.57 SF Ceiling |
| 158.24 SF Walls & Ceiling | 17.57 SF Floor |
| 1.95 SY Flooring | 16.67 LF Floor Perimeter |
| 22.17 LF Ceil. Perimeter | |

**Door**      5' 6" X 6' 8"      Opens into **BEDROOM_2**

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| 1. Content Manipulation charge - per hour | 1.00 HR | 26.58 | 26.58 | (0.00) | 26.58 |
| 2. Drywall repair - Minimum charge | 1.00 EA | 327.13 | 327.13 | (0.00) | 327.13 |
| Includes drywall installation in bathroom, master bathroom & walk-in closet | | | | | |
| 3. Floor protection - self-adhesive plastic film | 17.57 SF | 0.37 | 6.50 | (0.00) | 6.50 |
| 4. Paint the surface area - two coats | 158.24 SF | 0.51 | 80.70 | (0.00) | 80.70 |
| 5. Clean the walls and ceiling - Heavy | 785.74 SF | 0.24 | 188.58 | (0.00) | 188.58 |
| **Totals: Bedroom 2** | | | **629.49** | **0.00** | **629.49** |

**Master Bedroom**      **Height: 8'**

| | |
|---|---|
| 569.56 SF Walls | 356.15 SF Ceiling |
| 925.70 SF Walls & Ceiling | 356.15 SF Floor |
| 39.57 SY Flooring | 70.17 LF Floor Perimeter |
| 76.33 LF Ceil. Perimeter | |

**Door**      3' X 6' 8"      Opens into **LIVING_ROOM**



### Subroom 1: MASTER_BATH                                    Height: 8'

| | |
|---|---|
| 225.11 SF Walls | 66.67 SF Ceiling |
| 291.78 SF Walls & Ceiling | 66.67 SF Floor |
| 7.41 SY Flooring | 27.00 LF Floor Perimeter |
| 33.83 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| Door | 3' 8" X 6' 8" | Opens into  WALKIN_CLOS |
| Missing Wall - Goes to Floor | 3' 2" X 6' 8" | Opens into  MASTER_BEDRO |

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| 6. Contents - move out then reset | 0.50 EA | 33.49 | 16.75 | (0.00) | 16.75 |
| 7. Interior plaster repair - Minimum charge | 1.00 EA | 315.00 | 315.00 | (0.00) | 315.00 |
| 8. Paint the surface area - two coats | 22.00 SF | 0.85 | 18.70 | (0.00) | 18.70 |
| 9. Clean the surface area - Heavy | 291.78 SF | 0.24 | 70.03 | (0.00) | 70.03 |
| **Totals: Master Bedroom** | | | **420.48** | **0.00** | **420.48** |



### Walk-in Closet                                             Height: 8'

| | |
|---|---|
| 159.56 SF Walls | 32.81 SF Ceiling |
| 192.37 SF Walls & Ceiling | 32.81 SF Floor |
| 3.65 SY Flooring | 19.33 LF Floor Perimeter |
| 23.00 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| Door | 3' 8" X 6' 8" | Opens into  MASTER_BATH |

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| 10. Contents - move out then reset | 1.00 EA | 33.49 | 33.49 | (0.00) | 33.49 |
| 11. Floor protection - self-adhesive plastic film | 32.81 SF | 0.37 | 12.14 | (0.00) | 12.14 |
| 12. Paint the walls and ceiling - two coats | 192.37 SF | 0.51 | 98.11 | (0.00) | 98.11 |
| 13. Clean the walls and ceiling - Heavy | 192.37 SF | 0.24 | 46.17 | (0.00) | 46.17 |
| **Totals: Walk-in Closet** | | | **189.91** | **0.00** | **189.91** |

**Bathroom**                                                      **Height: 8'**

| | | |
|---|---|---|
| 251.56 SF Walls | | 58.00 SF Ceiling |
| 309.56 SF Walls & Ceiling | | 58.00 SF Floor |
| 6.44 SY Flooring | | 31.00 LF Floor Perimeter |
| 33.67 LF Ceil. Perimeter | | |

**Door**                          **2' 8" X 6' 8"**          Opens into  **LIVING_ROOM**

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| 14. Contents - move out then reset | 0.50 EA | 33.49 | 16.75 | (0.00) | 16.75 |
| 15. Finish carpentry - Minimum charge | 1.00 EA | 150.00 | 150.00 | (0.00) | 150.00 |
| Includes repair of vanity back in master bathroom. | | | | | |
| 19. R&R AC plywood - 1/4" | 16.00 SF | 1.54 | 24.64 | (0.00) | 24.64 |
| 16. Paint the surface area - two coats | 48.00 SF | 0.85 | 40.80 | (0.00) | 40.80 |
| Inside Vanity | | | | | |
| 17. Clean the walls and ceiling - Heavy | 309.56 SF | 0.24 | 74.29 | (0.00) | 74.29 |
| **Totals: Bathroom** | | | **306.48** | **0.00** | **306.48** |
| **Total: Main Level** | | | **1,546.36** | **0.00** | **1,546.36** |
| **Line Item Totals: 12-177-ESTIMATE-PHOT** | | | **1,546.36** | **0.00** | **1,546.36** |

**Grand Total Areas:**

| | | | | | |
|---|---|---|---|---|---|
| 6,500.20 | SF Walls | 4,029.83 | SF Ceiling | 10,530.03 | SF Walls and Ceiling |
| 4,029.83 | SF Floor | 447.76 | SY Flooring | 801.96 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 946.04 | LF Ceil. Perimeter |
| 4,029.83 | Floor Area | 4,440.94 | Total Area | 6,548.22 | Interior Wall Area |
| 2,835.94 | Exterior Wall Area | 336.83 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

### Summary for AA-Dwelling

| | | | | |
|---|---|---|---|---:|
| Line Item Total | | | | 1,546.36 |
| Sales Tax | @ | 8.188% x | 1,546.36 | 126.62 |
| **Replacement Cost Value** | | | | **$1,672.98** |
| Less Deductible | | | | (1,000.00) |
| **Net Claim** | | | | **$672.98** |

Darrell Shelton

## Recap by Room

**Estimate: 12-177-ESTIMATE-PHOT**

| Area: | | | |
|---|---|---|---|
| **Main Level** | | | |
| Bedroom 2 | | 629.49 | 40.71% |
| Master Bedroom | | 420.48 | 27.19% |
| Walk-in Closet | | 189.91 | 12.28% |
| Bathroom | | 306.48 | 19.82% |
| Area Subtotal:  Main Level | | 1,546.36 | 100.00% |
| **Subtotal of Areas** | | 1,546.36 | 100.00% |
| **Total** | | 1,546.36 | 100.00% |

## Recap by Category

| Items | Total | % |
|---|---|---|
| CLEANING | 379.07 | 22.66% |
| CONTENT MANIPULATION | 93.57 | 5.59% |
| GENERAL DEMOLITION | 3.68 | 0.22% |
| DRYWALL | 327.13 | 19.55% |
| FINISH CARPENTRY / TRIMWORK | 150.00 | 8.97% |
| FRAMING & ROUGH CARPENTRY | 20.96 | 1.25% |
| INTERIOR LATH & PLASTER | 315.00 | 18.83% |
| PAINTING | 256.95 | 15.36% |
| Subtotal | 1,546.36 | 92.43% |
| Sales Tax           @          8.188% | 126.62 | 7.57% |
| **Total** | **1,672.98** | **100.00%** |

ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.



1     1-Front of Risk       Date Taken: 7/30/2012      Taken By: Darrell Shelton



| 2 | 2-Bedroom #2 | Date Taken: 7/30/2012 | Taken By: Darrell Shelton |

Insured cut out drywall in bedroom closet in order to expose & Water line he originally believed was the water leak line (left water line on diagram). This water line was confirmed not to be the problem and was connected & re-energized.

**Green dots on diagram = holes torn into interior walls in order to access in wall plumbing lines.**



3      3-Walk in Closet                    Date Taken: 7/30/2012              Taken By: Darrell Shelton
       Mr. Insured is pointing to a 1" copper or flex water line **(main risk water line)** in closet which he cut into wedges it was
       determined this was the origin of the leak (underneath walls & concrete slab) and tried to sleep with a 3/4" plastic line.



4      4-Close-Up                    Date Taken: 7/30/2012              Taken By: Darrell Shelton
Mr. Insured is pointing to the 3/4"inch plastic water line he attempted to feed down the 1" flexible copper water lines which
if it had worked, would have resolve problems, but could not be said more than a foot or two.



5      5-Master Bedroom                Date Taken: 7/30/2012          Taken By: Darrell Shelton
       Shows holes in master bathroom walls.

       **Green dots on diagram also shows holes in interior plaster/painted drywall open by insured in order to access in wall plumbing lines.**



6      6-Close-Up                    Date Taken: 7/30/2012         Taken By: Darrell Shelton
       Shows hole knocked out in plaster wall in bathroom below vanity table.